McGLONE v. LANDRETH.

No. 32257.    April 13, 1948.

Rehearing Denied June 29, 1948.

*195 P. 2d 268.*

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for plaintiff in error.

Harlan S. Trower, of Tulsa, for defendant in error.

LUTTRELL, J. This is an action for false arrest, malicious prosecution and false imprisonment brought by plaintiff, Louise McGlone, against T. L. Landreth, dba Clover Leaf Cab Company. L. M. Collins, a cab driver for defendant, was also made a party to the action, but before the trial the case was dismissed without prejudice as to him, and proceeded to trial against defendant Landreth alone. The cause was tried to a jury, which returned a verdict for plaintiff. Defendant filed a motion for a new trial, which was by the trial court sustained, and plaintiff appeals.

Plaintiff was arrested for the alleged violation of an ordinance of the city of Tulsa making it an offense for any person riding as a passenger in a duly licensed taxicab, operated by a duly licensed driver within the city of Tulsa, to fail or refuse to pay the lawful fare for such transportation upon demand of the driver of said taxicab. Violation of the ordinance subjected the guilty party to a fine of not more than $18 and costs.

Plaintiff was the only witness who testified as to the events leading up to her arrest and imprisonment in the Tulsa city jail. She testified that on June 17, 1943, at about 3 o'clock a.m., she arrived at the Union Bus Station in the city of Tulsa; boarded a taxicab owned by defendant, and operated by Collins as driver, and directed him to drive her to her residence in the city; that when they arrived at her residence Collins demanded as fare the sum of 75c; that she told him that she had been in the habit of paying only 40c cab fare, and that he advised her that "This cab charges 75c"; that she told him she thought there must be a way to settle it and he stated there was not, and slammed the door, advising her that he would take her back to town; that she told him she did not wish to return to town, and he told her she would have to, or jump out. She further testified that he drove her back to the cab stand at the bus station, where there was another employee of defendant, and that after a little argument someone suggested that they take her down to jail; that she told them she had 60c in her purse and she would give it to them, she laid it down and the man in the cab stand picked it up and put it in the drawer, and she then went into the bus station to call her husband by telephone to get him to take her home; that when she came out of the telephone booth a couple of policemen were there and one inquired if she had an argument with a cab driver; she told him she had and that she settled it for 60c. The policemen advised her that the cab driver demanded an additional $1.25. She told the policemen that she had settled the dispute for 60¢ and would not pay $1.25 more; after some argument the policemen told her that she would have to go to the police station, and then took her to jail. After she was placed in jail she called her husband, who made bond for her and she was released. She and her husband then went to the cab stand and were paid the 60c which she had paid at the cab stand. She testified that at the time the policemen arrested her, Collins told the police that he would file charges against her, and they took her to the station in the patrol wagon. It appears that after her arrest Collins verified an information charging her with violation of the ordinance above referred to, and that upon prosecution she was discharged, the municipal court sustaining a demurrer to the information on the ground that the ordinance was unconstitutional.

Defendant Landreth testified that at the time this incident occurred he was at home and knew nothing about it; that Collins, the cab driver, was in the armed

forces and he did not know where he was; that he learned that plaintiff had been arrested about 6:00 o'clock the next morning, and that he concurred in what had been done. He further testified that the 75c charge by the driver was the regular established fare for passengers in that zone.

The trial court sustained the motion for new trial, stating that from the evidence it appeared that plaintiff refused to pay the cab fare; that the driver thereupon arrested her, brought her back to town and turned her over to the police officer, who took her to the city jail, where the cab company filed charges against her. It held that a private citizen had a right to arrest another where the other person committed a public offense within his presence, and that the ordinance, although unconstitutional, was sufficient to afford protection in a case of this character.

It is evident that the trial court misconstrued the testimony of plaintiff in stating his grounds for sustaining the motion. The testimony as it appears in the record does not establish an arrest of plaintiff by the cab driver in the first instance.

22 O.S. 1941 §186 defines "arrest" as follows:

"Arrest is the taking of a person into custody that he may be held to answer for a public offense."

By 12 O.S. 1941 §202, a private person may arrest another for a public offense committed or attempted in his presence. In case a private person makes such arrest, 22 O.S. 1941 §205 provides that he must, without unnecessary delay, take the person so arrested before a magistrate or deliver him to a peace officer.

While it may be that the restraint imposed upon plaintiff by the cab driver in refusing to permit her to alight from the cab, and transporting her back to the bus station, was sufficient to constitute false imprisonment, it was not sufficient to constitute an arrest as defined above. The evidence does not show that the cab driver advised plaintiff that she was under arrest, or that she had violated the city ordinance, and he did not take her before a magistrate or deliver her to a peace officer as provided by section 205, supra, but took her back to the bus station, to the cab stand operated by defendant, and there made an additional effort to collect the 75c fee claimed by him.

As stated in 22 Am. Jur., p. 354, §3, there is a distinction in the manner in which causes of action for false arrest and false imprisonment arise. The distinction is there stated as follows:

"In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law."

To the same effect is 35 C.J.S., p. 502, §2. The action of the cab driver in the instant case was not a detention by reason of an asserted legal authority to enforce the process of the law, but was for a purely private purpose, the collection of the cab fare he demanded. This purpose was accomplished and the dispute settled by the payment of 60c by plaintiff, which was accepted by defendant's employees, and thereupon plaintiff was permitted to depart free from any restraint of any character, and went unaccompanied into the bus station to try to get in touch with her husband for the purpose of having him take her to her residence. According to her testimony she had been in the bus station some 15 minutes when she was arrested by the officers and placed in jail because she refused to pay the additional sum of $1.25, a new demand by the cab driver, after she had settled the original demand. There is no evidence that this additional sum constituted a lawful fare for transportation. The arrest by the officers was made

without a warrant, upon complaint of the cab driver, for her refusal to pay this unlawful demand.

22 O.S. 1941 §187 provides that an arrest may be either (1) by a peace officer under warrant; (2) by a peace officer without a warrant, and (3) by a private person.

22 O.S. 1941 §196 provides that a peace officer may arrest a person without a warrant (1) for a public offense committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) where a felony has been committed and the officer has reasonable cause for believing that the person arrested committed it, and (4) on the charge that the party arrested had committed a felony made upon reasonable cause. Clearly plaintiff did not violate the ordinance, and was guilty of the commission of no public offense while the officers were present, simply because she refused to pay an unlawful demand by the taxicab driver after she had settled with him for his charges, and she was not engaged in and did not appear to be engaged in the commission of any felony. Even if she had been guilty of refusal to pay the taxicab fare in the first instance, that was not done in the presence of the officers.

In Lyons v. Worley, 152 Okla. 57, 4 P. 2d 3, we held that the only justification for an arrest for a misdemeanor by an officer without a warrant was that it was committed or attempted in the presence of the officer. We said:

"An officer cannot arrest without a warrant for a past misdemeanor, even though upon being questioned by the officer the accused prior to his arrest admits the commission of the past offense."

The fact that for her refusal to pay said additional amount, plaintiff, on the complaint and upon the instigation of the taxicab driver, who was the agent of defendant, was arrested and taken to the city jail and there confined until her husband made bond and secured her release, was sufficient to establish the liability of defendant and the false arrest and imprisonment of plaintiff. Such evidence standing uncontradicted was sufficient to support the verdict of the jury.

In S. H. Kress & Co. v. Bradshaw, 186 Okla. 588, 99 P. 2d 508, we said:

"A well established principle of law is that all who by direct act or indirect procurement, personally participate in, or proximately cause, the false imprisonment or unlawful detention of another are liable therefor. 22 Am. Jur. 371, sec. 31; 25 C.J. 497, sec. 69; Halliburton-Abbott Co. v. Hodge, 172 Okla. 175, 44 P. 2d 122. And as to each participant, the law is unconcerned with the extent or degree of his activity when it comes to consider the question of liability, and places all on the same footing, each equally liable, jointly and severally. And this is true, regardless of whether a conspiracy to do the act theretofore had been entered into. 22 Am. Jur. 371, sec. 30; 25 C.J. 497, sec. 69; Meints v. Huntington et al., 8 Cir., 276 F. 245, 19 A.L.R. 664."

The trial court erred in sustaining the motion for new trial for the reasons stated by it in so doing. And where the trial court upon the request of a litigant states its reasons for sustaining a motion for new trial, this court will confine its review to the reasons so assigned. Little v. Lovett, 193 Okla. 157, 141 P. 2d 794.

From the record it appears that the action of the trial court in sustaining the motion was based upon an error in respect to a pure, simple and unmixed question of law. This necessitates reversal. City of Holdenville v. Deer, 191 Okla. 691, 132 P. 2d 928.

Reversed, with direction to overrule the motion for new trial.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, GIBSON, and CORN, JJ., concur.