**MISSOURI, KANSAS AND OKLAHOMA COACH LINES, a Corporation, Plaintiff in Error,**

v.

**Roy F. MEISTER, Defendant in Error.**

No. 37940.

Supreme Court of Oklahoma.

Oct. 7, 1958.

**580**

Hudson, Hudson, Wheaton & Kyle, Tulsa, for plaintiff in error.

Elmore A. Page, Tulsa, for defendant in error.

PER CURIAM.

The parties to this appeal will be designated herein as in the trial court, although they appear here inversely to the order of their appearance there.

Prior to the institution of this action, plaintiff was charged by information in the Common Pleas Court of Tulsa County with the offense of embezzlement. Upon trial of that charge he was acquitted. Thereafter he filed this action and upon trial was awarded damages by a jury verdict upon which judgment against defendant was rendered. Defendant has appealed. The issue in this action involves the defense of "probable cause."

Prior to June 16, 1954, plaintiff was a bus driver for the defendant on an overnight round-trip schedule between Tulsa and Oklahoma City. Circumstances directed the attention of the officers of defendant to the actions of the plaintiff in handling fares received by him. Defendant employed a professional auditor whose business was to ride public conveyances to check the drivers in the performance of their duties. During April, May, and June of 1954, this auditor and his employees checked plaintiff by boarding his bus at points necessitating the payment of cash fares to the driver. These instances and the amount paid the plaintiff were reported to the defendant's officers who checked plaintiff's trip manifest to learn if the proper report of the passengers and the amount of their fares had been made. On several occasions discrepancies existed between the two reports. On June 14, 1954, the general manager of defendant accompanied the auditor and personally observed several employees of the auditor board the plaintiff's bus and hand him the cash for their fare. The plaintiff's report for that trip did not reflect these passengers or contain the proper cash and cash fare stub or any tickets that plaintiff could have

bought for these passengers. It was undisputed that the proper procedure required the driver to account in his trip manifest for each person boarding his bus on that trip by noting the point of boarding and the destination of the passenger and the amount of cash fare received as well as including in his report either a cash fare stub or a ticket purchased for the passenger by the driver at the next station. The same procedure employed to check on plaintiff on June 14 was used again on June 15, and when plaintiff returned from this trip he was met at the station by the general manager who asked plaintiff to accompany him to a certain hotel room in Tulsa. In this room, when plaintiff and the general manager arrived, were the auditor, two other officials of the defendant, and an investigator from the Tulsa County Attorney's office who was present at the County Attorney's direction upon defendant's request. The County Attorney's investigator did not leave the room while plaintiff was there, and he heard and observed the entire interview. This meeting was also recorded on tape. At this interview the plaintiff was questioned at length concerning his handling of cash fares generally and specifically about the instance on which the auditor had placed cash fares on his bus and on which his records failed to disclose the passenger. This questioning culminated in plaintiff signing a statement dictated by the auditor in which appears the following:

"I, Roy Meister, believe that 25 or 30 dollars is what I have kept in cash fares, property of MKO Trailways of Tulsa, Oklahoma."

Plaintiff, at the interview and at the trial, admitted that he used the money received as cash fares on June 14 to pay his room rent at Oklahoma City during the layover and that he had used cash fare money for his personal use several times. Plaintiff testified that he always returned this money in a report in a "day or two after" using it. He testified that all drivers did this. In addition it appears that it was customary and within the knowledge of defendant for drivers to buy tickets at the next station for cash fares rather than execute a cash fare receipt and also that it was proper for drivers to use cash fare money for necessary expenses incurred by them for the defendant while on a trip. At the conclusion of this interview the County Attorney's investigator returned to his office and talked about the case with the Assistant County Attorney who eventually filed the charges. He was also present in the office during the time the officers of defendant talked with this Assistant County Attorney prior to the filing of the information against plaintiff. The investigator was also listed as a witness on the information. The Assistant County Attorney testified that defendant's officers related many of the above facts to him in their conference but that they did not tell him that plaintiff denied keeping the money and that the auditor dictated the statement signed by plaintiff. One of defendant's officers testified that the tape recording of the conference with plaintiff was offered to be played to the Assistant County Attorney but that he told them it was not necessary. The defendant's officers also testified that they acted on the Assistant County Attorney's advice which was that there were sufficient facts to prosecute. The information was verified by a second investigator of the County Attorney's staff and the officers and agents of the defendant appeared thereon only as witnesses for the State. Defendant asserts that the court erred in overruling its demurrer to the evidence and motion for a directed verdict. Upon the basis of the foregoing undisputed evidence, we agree.

■ In an action for malicious prosecution where the evidence fails to show malice and an absence of probable cause for the institution of criminal proceedings, a motion for a directed verdict should be sustained. Williams v. Frey, 182 Okl. 556, 78 P.2d 1052. Probable cause for the prosecution of a person constitutes a complete defense to an action of this nature. Towne v. Martin, 196 Okl. 510, 166 P.2d 98. Whether probable cause exists is not the

same question as whether the person accused is actually guilty. Proof of an acquittal is not sufficient to establish want of probable cause. Brown v. St. Louis & S. F. Ry. Co., 158 Okl. 31, 12 P.2d 528, for, "if the facts and circumstances known to the person causing the warrant to issue are such as to justify a man of prudence and caution in believing that the offense has been committed," [182 Okl. 556, 78 P.2d 1054] the defense is established. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. In the instant case the offense charged was that of embezzlement. Our statutes provide that this offense is the fraudulent appropriation of property by a person to whom it has been entrusted, 21 O.S.1951 § 1451, and that an intent to restore the property taken is no defense, or grounds for mitigation of punishment unless restored prior to an information filed charging the offense. 21 O.S.1951 §§ 1460 and 1461; State v. Duerksen, 8 Okl.Cr. 601, 129 P. 881, 52 L.R.A., N.S., 1013. With the nature of the offense thus clearly in mind, the evidence in this action establishes that defendant had probable cause for the complaint. Plaintiff admitted that he spent defendant's cash fare money for his own personal use, which admission was sufficient to establish probable cause in view of our statutes on the subject notwithstanding his intent to return the money on a later date, unless the use of the money was by permission of the defendant. Our examination of the record does not disclose any testimony that the personal use of this money, without a proper record on the trip manifest, was authorized by defendant or that it knew of the practice of the drivers in this regard, even though, as plaintiff testified, all drivers did use the funds.

■ However, it is not necessary to rest our decision on the foregoing conclusion alone. The undisputed evidence discloses that all facts known to the defendant were known to the Assistant County Attorney who filed the action or to the investigator assigned to this case. Neither of these witnesses were questioned concerning their private discussion of the facts developed at the hotel room interview of plaintiff at which the investigator was present, but this officer of the County Attorney's staff was present at that meeting at the direction of the County Attorney upon the request of the defendant. The information gained by him at that time was a sufficient full and complete disclosure to the Assistant County Attorney who acted upon it as well as upon the personal statements made to him by the various officers or agents of defendant in their subsequent conference prior to the filing of charges. In securing the personal presence of a member of the County Attorney's staff, the officers of defendant did all that could reasonably be expected of them in disclosing the facts of the case to the County Attorney. In addition, they offered to play for him the tape recording of the entire interview, which he declined. In Williams v. Frey, supra, we held:

"Where a full and fair disclosure of the material facts has been made to counsel, and his advice is honestly sought and acted on in good faith, it negatives the absence of probable cause and is alone a complete defense to an action for wrongful search and seizure."

The defendant here made a full and fair disclosure to the Assistant County Attorney and honestly sought and acted on his advice. The evidence in this case affirmatively established the existence of probable cause, and the motion for a directed verdict should have been sustained.

The judgment is reversed.

WELCH, C. J.; and DAVISON, HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was written by Commissioner James H. Nease, the cause was assigned

583

to a Justice of this Court for examination and report to the court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.